# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff

-vs-                                         Case No. 2:06-cr-123-FtM-29DNF

ROSALINA LOPEZ-JUAN,

        Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO SUPPRESS (Doc. No. 53)** |
| **FILED:** | **May 17, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

    The Defendant, Rosalina Lopez-Juan is requesting that any statements made by her to agents be suppressed. The Defendant is charged in Count One of the Indictment with knowingly harboring an illegal alien in the United States in violation of 8 U.S.C. §§1324(a)(1)(A)(iii) and (B)(iii). The Defendant asserts that she was interviewed in Spanish at her home, and that she does not speak Spanish nor English fluently, but only speaks Qanjobal fluently, which is a Mayan language.

    The Government filed its Response (Doc. 54) asserting that the Defendant does speak Spanish and did understand the questions asked of her in Spanish. An evidentiary hearing was held on May 29, 2007. A Supplemental Memorandum of Law (Doc. 61) was filed by the Defendant, and a Response

to Supplemental Memorandum of Law (Doc. 64) was filed by the Government which was later stricken in an Order (Doc. 67) entered on June 14, 2007. A continuation of the evidentiary hearing was held on June 26, 2007[1].

## I.   Testimony and Evidence

At the hearing on May 29, 2007, the Government presented the testimony of Special Agent James Roncinske of the Federal Bureau of Investigation ("FBI"); Marisol Schloendorn, a victim advocate for the Collier County Sheriff's Office; and Charles Frost, a detective with the Collier County Sheriff's Office.   At the hearing on May 29, 2007, the Defendant presented the testimony of Maruca Lopez, the Defendant's sister; and Delores Juan, the Defendant's daughter.  At the hearing on June 26, 2007, the Government presented the testimony of Fermaint Rios, who works for the Department of Children and Family Services and Agent Roncinske.

### A.   Testimony of Agent Roncinske

Special Agent Roncinske has been employed by the FBI for over seven years. (Tr[2]. p. 3).   On November 2, 2006, Special Agent Roncinske went to a residence in Immokalee, Florida to gather

---

[1]  At the evidentiary hearing held on May 29, 2007, the Court allowed the parties to file additional briefs.  The Defendant filed her brief (Doc. 61) and the Government filed a Response to Supplemental Memorandum of Law (Doc. 64).  The Government attached three documents to its Response which were not introduced at the evidentiary hearing.  The Defendant filed a Motion to Strike (Doc. 65) asking that the Court strike the Government's Response due to the Defendant not having an opportunity to confront this new evidence.  In an Order (Doc. 67) entered on June 14, 2007, the Court granted the Motion to Strike and struck the Government's Response.  The Court also reopened the evidentiary hearing to allow the Government an opportunity to present the evidence submitted in the Response.  The Court held the continuation hearing on June 26, 2007.

[2]  "Tr." refers to the transcript (Doc. 63) of the hearing held on May 29, 2007.

information on an investigation into human trafficking. (Tr. p. 4). He was accompanied by Detective Charles Frost and Marisol Schloendorn. (Tr. p. 4). He arrived at the residence, 3544 Carson Lakes Circle, in the late morning hours of November 2, 2006. (Tr. p. 4, 13) He was in an unmarked vehicle and was dressed in a suit. (Tr. p. 5). Detective Frost and Ms. Schloendorn were dressed in jeans. (Tr. p. 5). No weapons were displayed. (Tr. p. 5). Special Agent Roncinske knocked on the door and the Defendant opened the door. (Tr. p. 5). Special Agent Roncinske does not speak Spanish fluently, however, Ms. Schloendorn does speak both Spanish and English fluently and was the interpreter during the interview. (Tr. p. 7, 27).

The Defendant stepped inside the residence and seated herself on the sofa. (Tr. p. 7). Special Agent Roncinske asked questions in English and Ms. Schloendorn translated them into Spanish, the Defendant responded to the questions, and Ms. Schloendorn translated the response into English. (Tr. p. 7). Special Agent Roncinske testified that the Defendant appeared calm and relaxed, not nervous or upset. (Tr. p. 8). The Defendant never indicated non-verbally that she did not want to answer the questions posed. (Tr. p. 8). Agent Roncinske learned that the Defendant had been in the United States for twenty years. (Tr. p. 30). Agent Roncinske took notes during the interview and wrote a report, a copy of which is attached to the Government's Response ( Tr. p. 7, 8-9; Doc. 54). The interview lasted approximately an hour to an hour and 15 minutes. (Tr. p. 8).

On cross-examination, Special Agent Roncinske testified that he had no appointment with the Defendant, and the Defendant was not aware that he was coming to interview her. (Tr. p. 11-12). He had interviewed the alleged victim as well as the Defendant's husband who is a Co-Defendant in this case. (Tr. p. 11). He was attempting to confirm and corroborate the information that he already had and obtain new information. (Tr. p. 12). The only other person in the home besides the Defendant was

an infant. (Tr. p. 13).   Special Agent Roncinske knew that Ms. Schloendorn was not a certified interpreter. (Tr. p. 14).   Special Agent Roncinske did not know the Defendant's educational history until the interview began and Ms. Schloendorn told him that the Defendant never attended school. (Tr. p. 15).   From his perspective as well as his limited knowledge of Spanish, he perceived that the dialogue was going smoothly. (Tr. p. 16). Special Agent Roncinske did show the Defendant his credentials.  (Tr. p. 19).   Detective Frost left the residence a few times to use his cellular telephone. (Tr. p. 24).   Both Special Agent Roncinske and Ms. Schloendorn stood during the entire interview. (Tr. p. 24-25). Agent Roncinske never told the Defendant that she did not have to talk to them.  (Tr. p. 27). Agent Roncinske did not advise the Defendant she could have a lawyer present, did not tell her she was under investigation, but did tell her early in the interview that she was not under arrest. (Tr. p. 27-28).

### B.  Marisol Schloendorn

Ms. Schloendorn is a victim advocate for the Collier County Sheriff's Office for the human trafficking unit. (Tr. p. 31).   She is fluent in both Spanish and English, and Spanish was her first language. (Tr. p. 31).   On November 2, 2006, she went to Immokalee to interpret for Agent Roncinske and Detective Frost. (Tr. p. 31-32).   When the Defendant opened the door, Ms. Schloendorn introduced herself, Agent Roncinske and Detective Frost, and Agent Roncinske showed the Defendant his credentials.  (Tr. p. 32-33). She spoke to the Defendant in Spanish, and the Defendant appeared to understand her. (Tr. p. 33).   She said to the Defendant that they wanted to ask her some questions, and the Defendant replied, "ok." (Tr. p. 32, 43).   The Defendant moved out of the way and let them into the house. (Tr. p. 34).   The Defendant responded in a manner indicating she understood the questions.  (Tr. p. 34).   Agent Roncinske told Ms. Schloendorn what to say to the Defendant, and she

translated his words into Spanish, then translated the Defendant's Spanish into English for Agent Roncinske. (Tr. p. 35). The Defendant appeared calm, not agitated or upset. (Tr. p. 35). Ms. Schloendorn did not take notes, only interpreted what was said. (Tr. p. 35). Ms. Schloendorn did not remember the Defendant asking for clarification or asking to have a question repeated. (Tr. p. 34, 36). Ms. Schloendorn concluded that the Defendant understood everything that was said to her in Spanish. (Tr. p. 36).

On cross-examination, Ms. Schloendorn testified that she and the officers stood in front of the Defendant while she was being questioned. (Tr. p. 45-46). Ms. Schloendorn did not have any conversations with the Defendant as to clarification of a question.(Tr. p. 50). Ms. Schloendorn recalled telling the Defendant that they were not there to arrest her but only to talk to her. (Tr. p. 50-51). Ms. Schloendorn did not read the Defendant her *Miranda*[3] rights. (Tr. p. 54).


### C.  Detective Frost

Detective Frost is a detective with the Collier County Sheriff's Office and handles the human trafficking cases. (Tr. p. 57, 58)  On November 2, 2006, he accompanied Agent Roncinske and Ms. Schloendorn on an interview of the Defendant. (Tr. p. 58). He did leave the interview at times to take telephone calls on his cellular telephone. (Tr. p. 59). He had limited participation in the interview. (Tr. p. 59). During the interview, the Defendant spoke freely. (Tr. p. 59). Detective Frost does not speak Spanish. (Tr. p. 58). He found the Defendant to be comfortable, not tense. (Tr. p. 59). He did not read the Defendant her *Miranda* rights. (Tr. p. 60).  The interview ended when questions were raised regarding sex and her husband. (Tr. p. 60). The Defendant became a little evasive and did not respond

---

[3]  *Miranda v. State of Arizona*, 384 U.S. 436 (1966).

to the questions saying she did not understand.  (Tr. P. 60).  At that point, the interview ended.  (Tr. p. 60).

**D.  Fermaint Rios**

Mr. Rios works for Children and Family Services in Immokalee, Florida. (Continuation Tr.[4] p. 5).  On October 20, 2006, he received information that a young mother might be the victim of human trafficking. (Continuation Tr. p. 5).  On that same day, he went to the Defendant's residence and met with the Defendant for the first time. (Continuation Tr. p. 5-6).  Mr. Rios is a native Spanish speaker. (Continuation Tr. p. 6).  He spoke in Spanish with both the Defendant and her husband.  (Continuation Tr. p. 6).  The Defendant conversed with him in Spanish and appeared to understand everything he said, and responded to his questions appropriately.   (Continuation Tr. p. 6-7).  The Defendant also interpreted for the victim who spoke only a Guatemalan dialect. (Continuation Tr. p. 7).  The Defendant would translate Mr. Rios' Spanish into the Guatemalan dialect, and then translate the victim's response from the Guatemalan dialect to Spanish. (Continuation Tr. p. 7-8).  Mr. Rios did state that the Defendant's husband did the bulk of the interpreting, but that the Defendant also did some as well. (Continuation Tr. p. 12-13).  When Mr. Rios asked questions concerning biographical information, such as name and date of birth, the Defendant responded appropriately. (Continuation Tr. p. 7, 13-14).

**E.  Maruca Lopez[5]**

---

[4] "Continuation Tr." refers to the transcript of the Continuation of Suppression Hearing (Doc. 73) held on June 26, 2007.

[5] Ms. Lopez also gave the name of Maruca Francisco Domingo at the hearing. (Tr. p. 64).

Ms. Lopez is the sister of the Defendant. (Tr. p. 64).   Her primary language and the Defendant's primary language is Qanjobal. (Tr. p. 65).   Both she and the Defendant speak a little Spanish, and can have a simple conversation in Spanish. (Tr. p. 65-66). The Defendant has never been to school. (Tr. p. 66).   Their father died in Guatemala when the military arrived in their village. (Tr. p. 66).   He was beheaded. (Tr. p. 66).   She and the Defendant were living in Guatemala at that time. (Tr. p. 66).   Forty-seven other people were also killed in their village. (Tr. p. 67).   Ms. Lopez testified that her sister does attend church and the services are in Spanish. (Tr. p. 69).

**F.  Delores Juan**

Ms. Juan is the daughter of the Defendant. (Tr. p. 70).   She speaks English, Spanish, and Qanjobal. (Tr. p. 70-71).   She learned Spanish from her friends. (Tr. p. 71).   Her first language was Qanjobal which is the language spoken in her parent's home. (Tr. p. 71). Her mother only speaks a little Spanish, just a few words. (Tr. p. 71).   Her mother's Spanish does not make sense. (Tr. p. 72). Ms. Juan goes with her mother to doctor appointments, clothes shopping, and food shopping to interpret. (Tr. p. 72).   She interprets for her mother with the neighbors. (Tr. p. 72-73). Ms. Juan verified that her mother goes to church every Thursday and the services are in Spanish.  (Tr. p. 74).

**II. Analysis**

The issues raised are whether the Defendant was in custody at the time of her interview, and whether her statements were voluntary.

**A. Custody**

Although the Defendant did not vigorously argue that she was in custody at the time of the interview, she did not waive this argument.  If the Defendant was in custody, then *Miranda* warnings would have been required, however pre-custodial questioning does not require *Miranda* warnings be given.  *See, United States v. Brown*, 441 F.3d 1330, 1347-1349 (11th Cir. 2006).  An individual is in custody when there is a "formal arrest or restraint on freedom of movement of the degree associated with formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983).  The test to determine if an individual is in custody is an objective one which depends upon the totality of the circumstances and whether a reasonable person in the same position would feel a restraint on his freedom to the extent that he would not feel free to leave.  *United States v. Brown*, 441 F.3d at 1347, (citing *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001)).  The subjective beliefs of the interviewee and the officers on whether the interviewee is free to leave are not relevant to the inquiry of whether the interviewee is in custody.  *United States v. Brown*, 441 F.3d at 1347, (citing *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).  Some factors to consider in determining the issue of custody is whether weapons were brandished, the interviewee was touched, the language used, and the tone of the officers.  *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006).

In the instant case, the officers knocked on the Defendant's door, identified themselves, and the Defendant stepped back from the door and allowed them to enter her residence.  None of the officers displayed their weapons.  There was no testimony that anyone present touched the Defendant.  Further, there was no testimony that Special Agent Roncinske or Ms. Schloendorn used any tone which was coercive with the Defendant.  The testimony was that the officers, through the interpreter had a calm conversation with the Defendant.  When the Defendant became evasive and stated that she did not understand the questions concerning her husband, the interview ended.  From an objective

viewpoint of a reasonable person in the same situation, the Court finds no evidence that the Defendant, Rosalina Lopez Juan was in custody at the time of her interview with Special Agent Roncinske and Detective Frost, and therefore, the officers were not required to provide the Defendant with *Miranda* warnings.

### B.  Voluntariness of Statements

The Defendant asserts that her statements were not voluntary arguing that the Defendant lacked experience with the laws in the United States, her prior experience with the Guatemalan officials made her susceptible to coercion, she was not given *Miranda* warnings, and there was no interpreter who could be assured that the Defendant could completely understand the purpose of the interrogation, her right not to speak, and the consequences of making statements.  The Government argues that the Defendant does understand Spanish, and the statements made were voluntary.

The burden is on the Government to prove, by a preponderance of the evidence, that a Defendant's statement was made voluntarily.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972), *United States v. Grimes*, 142 F.3d 1342, 1350 (11th Cir. 1998).  Even when the interrogation had been non-custodial, the Government continues to have the burden of proving by a preponderance of the evidence that a defendant's statements are voluntary.  *United States v. Salisbury*, 966 F.Supp. 1082, 1086 (N. D. Ala. 1997).  "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimation, coercion or deception."  *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). To determine if a statement is voluntary, a court must look to the "totality of the circumstances" and whether the police conduct was "causally related" to the confession.  *United States v. Louis,* 157 Fed.Appx. 165, 169 (11th Cir. 2005).   A defendant's characteristics must also be considered such as age, education and intelligence.

-9-

*Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004). Some other factors courts consider are the nature of the interrogations, whether physical force was used, and any promises of leniency. *United States v. Louis*, 157 Fed.Appx. at 169.  No single factor is determinative, but rather the Court must consider the totality of all of the factors.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

### 1. Language

The Defendant's main argument is that the her lack of knowledge of Spanish precluded her from understanding, and therefore her statements were not voluntary. The Defendant cites *United States v. Short*, 790 F.2d 464, (6th Cir. 1986) for the proposition that a language barrier can be sufficient to render a statement involuntary.  In *Short*, the government conceded that Short spoke English so poorly that the agents had to take special precautions to explain to Short her *Miranda* warnings. *Id.* at 469. Only the agents were of the opinion that Short understood the proceedings.  *Id*. The Court found the government had not met its burden as to voluntariness of Short's statements.  *Id*.

The Defendant also cites to the case of *United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991). The Defendant, Lavin was a native Spanish-speaker and had a fifth grade education.  *Id*. at 1434.  He did not speak English and he did not read Spanish.  *Id*.  He signed the *Miranda* waiver form only when the agents told him that signing it would not hurt him.  *Id*. The Eleventh Circuit noted that there is case law that establishes that in spite of a lack of education and inability to speak English, a defendant may still be capable of knowingly and intelligently waiving his *Miranda* rights.  *Id*. at 1435.  The Eleventh Circuit focused on the fact that the agents told Lavin that it would not hurt him to sign the form which contradicts the *Miranda* warning that any statement made by the defendant could be used against him. *Id*.  The Eleventh Circuit held that the district court erred by admitting Lavin's statement.  *Id.*

In the case of *United States v. Chun Zioa Yuan*, 2006 WL 2726113 (D. Kan. 2006), the Court faced a similar issue. Yuan's native language was Cantonese and he spoke no English. *Id*. at *1. Yuan was arrested and given a *Miranda* waiver form printed in English and Mandarin. *Id*. at *2. Yuan was asked if he spoke Mandarin and he said yes. *Id*. Yuan was calm and cooperative. *Id*. Yuan later argued that he was unfamiliar with Mandarin Chinese. *Id.* *4. The court found Yuan to have been calm and able to express himself clearly. *Id*. During the interview, he never indicated that he did not understand Mandarin and never asked that a different dialect be spoken. *Id*. The court also took other factors into consideration such as Yuan being mature, educated, and of average intelligence. *Id*. The Court found that even though language barriers may inhibit a person's ability to knowingly and intelligently waive *Miranda* rights, there was no indication that Yuan did not understand the rights read to him and written in Mandarin. *Id*.

In the instant case, the Defendant appeared to understand and respond in Spanish to the questions posed by the interpreter Mr. Schloendorn during the interview. Ms. Schloendorn testified that she believed the Defendant understood Spanish and responded to questions appropriately. The Defendant did not ask for clarification from Ms. Schloendorn and the Defendant did not tell Ms. Schloendorn that she did not understand. Mr. Rios testified that it appeared to him that in October 2006, the Defendant understood Spanish and was able to translate Spanish into the Guatemalan dialect for him so that he could communicate with the victim. The Defendant responded appropriately to Mr. Rios' questions.

The Court determines that the Defendant is capable of speaking and understanding Spanish. The Defendant never indicated that she did not understand the Spanish that was spoken to her by Ms. Schloendorn until such time that sensitive issues were raised and she decided not to answer any further

questions.  The Defendant never indicated to Mr. Rios that she did not understand his Spanish and answered his questions appropriately.

### 2. Education

The Defendant claims that her statements were not voluntary because she lacks education.  One factor for the Court to consider is the education level of the Defendant.  *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004).  Lack of education, such as the ability to read or write alone does not render a statement involuntary.  *United States v. Gaines*, 295 F.3d 293, 298 (2[d] Cir. 2002). The Court recognizes that it is the Government's burden to prove voluntariness, however, the Defendant has not shown that her lack of education affected her decision to speak to the officers.  Her lack of education alone does not make her statements involuntary.  However, when the Court reviews the totality of the circumstances, the Defendant's lack of education will be considered.

### 3. Promise of Leniency

The Defendant also asserts that she was misled when Agent Roncinske tried to tell her that she was not under arrest or as Ms. Schloendorn recalled, telling the Defendant that they were not there to arrest her,  but only to talk to her. The Defendant argues that she could have interpreted this statement as a promise of leniency if she cooperated with them.  In *United States v. Rogers*, 906 F.2d 189, 191 (5th Cir. 1990), Rogers was assured by the officers interviewing him that he would not be arrested if he cooperated with them.  Rogers acted in reliance on that promise and delivered guns to the officers. *Id*.  The Fifth Circuit found that Rogers' statements were not voluntary. *Id*. at 192.  The *Rogers* case is distinguishable from the instant case.  In *Rogers*, the officers assured him he would not be arrested, whereas in the instant case, Ms. Schloendorn testified that she told the Defendant that they were not there to arrest her, but only to talk to her, and Agent Roncinske testified that he recalled telling the

Defendant that she was not under arrest.  Neither statement constitutes a promise to the Defendant that she will not be arrested, but only informs her that she was not under arrest at the time of the interview. The Court finds that the officers did not make any promises of leniency to the Defendant.

### 4.  Not Required to Speak to Officers

The Defendant asserts that a person must be able to understand that she is not required to speak to police officers citing *Henry v. Dees*, 658 F.2d 406, 411 (5th Cir. 1981) and *Mincey v. Arizona*, 437 U.S. 385, 398-401 (1978).  Both cases are distinguishable from the instant case.  In *Henry*, the Defendant's mental capacity was deficient which made him vulnerable to suggestion.  *Henry v. Dees*, 658 F.2d at 409.  That court found that based upon the defendant's limited mental ability, the defendant's understanding of documents he signed waiving his rights was questionable.  *Id.* at 411. In *Mincey*, the defendant was badly wounded, received some treatment, and then was interrogated while in the intensive care unit and while complaining that the pain in his leg was unbearable.  *Mincey v. Arizona*, 437 U.S. at 398.  The Supreme Court found the defendant to have been "confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation" because some of his written responses were incoherent.  *Id*. at 398-99.  These cases are distinguishable from the instant case.  There is no evidence in the record that Rosalina Juan did not have the mental capacity to understand her situation nor is there any testimony that she was incoherent or confused.

### 5.  Totality of Circumstances

The Court must look to the totality of the circumstances surrounding the interview in this case. *See, Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), and *United States v. Louis*, 157 Fed.Appx. 165, 169 (11th Cir. 2005).   The officers went to the residence of the Defendant and were admitted into

her home by her. The Defendant was not in custody, and therefore, *Miranda* warnings were not required. The testimony by Special Agent Roncinske, Detective Frost and Ms. Schloendorn was that the Defendant was calm, cooperative, and not upset.  The Defendant was told that the officers were not there to arrest her or that she was not under arrest.  The Defendant has resided in the United States for approximately twenty (20) years. The testimony produced was that the interview was conducted in a relatively relaxed atmosphere and was mainly a conversation among the officers and the Defendant.

Possible factors weighing against the voluntariness of the situation were Ms. Lopez's testimony that the Defendant had no schooling, and Ms. Lopez's and Ms. Delores Juan's testimony that the Defendant spoke little Spanish, and was subjected to atrocities by officials in Guatemala.  The Defendant also claims that the statement that she was not under arrest at the outset of the interview was a promise of leniency.  There was no testimony that any physical force was used.

The totality of the circumstances weighs in favor of the Defendant having made voluntary statements.  As to the language issue, the Court finds that the Defendant understood Ms. Schloendorn's Spanish.  There was no testimony that the Defendant stated that she could not understand Spanish or that she needed clarification and lengthy explanations regarding the questions asked.  Mr. Rios' testimony that the Defendant understood Spanish and acted as an interpreter in October 2006, bolsters Ms. Schloendorn's testimony.  The Defendant remained calm and cooperative until the interview ended.  There was no evidence that the Defendant has other than average intelligence, and there were no evidence that her lack of a formal education hindered her abilities to understand the situation.  Further, based upon the Defendant's calm demeanor and her twenty (20) years of residency in the United States, the Court determines that there is no evidence that the atrocities that occurred in Guatemala affected the voluntariness of her statements.  The Court determines that

-14-

the Government met its burden by a preponderance of the evidence that the statements made by the Defendant were voluntarily given.

### III.  Conclusion

The Court determines that the Defendant was not in custody at the time of her interview on November 2, 2006, and that the statements she made to law enforcement officers were voluntary.  The Court respectfully recommends that the Motion to Suppress (Doc. 53) be denied and that the Defendant's statements not be suppressed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __13th__   day of  _July_ __, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record